UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gloria-Maria Dardini,
               Plaintiff,

v.

Chase A/K/A Chase Home Lending,
Federal Home Loan Mortgage Corporation,
A/K/A Freddie Mac, and Trott & Trott, PC,        Case No. 12-cv-12559
jointly and severally,
               Defendants.
and

Federal Home Loan Mortgage Corporation, a/k/a        Sean F. Cox
Freddie Mac                     United States District Court Judge
               Counter-Plaintiff/Third-Party Plaintiff,
v.

Gloria-Marie Dardini, William Dardini,
               Counter-Defendant and Third-Party
               Defendant,
and

William Dardini,
               Counter-Plaintiff/Cross-Plaintiff,
v.

Chase A/K/A Chase Home Lending, Federal Home
Loan Mortgage Corporation a/k/a Freddie Mac,
Trott & Trott, P.C.
               Counter-Defendant and Cross-Defendants,
               joint and several.

_____/

**OPINION AND ORDER
GRANTING (1) DEFENDANTS JPMORGAN CHASE BANK, N.A. AND FEDERAL
HOME MORTGAGE CORPORATION'S (1) MOTIONS FOR SUMMARY JUDGMENT
[DOCKET ENTRY NOS. 26, 37], (2) MOTION FOR JUDGMENT ON THE PLEADINGS**

1

**[DOCKET ENTRY NO. 27], AND (3) MOTION TO DISMISS [ DOCKET ENTRY NO. 38]**

On September 22, 2000, Gloria-Maria Dardini and her husband, William Dardini, (collectively "the Dardinis") purchased a home located at 22947 Gaukler, St. Clair Shores, Michigan ("the Gaukler Property"). In order to purchase the Gaukler Property, the Dardinis received a $114,000.00 loan from Mortgage 1, Incorporated. William Dardini signed a promissory note executed in favor of Mortgage 1, Incorporated on the same day the warranty deed was executed by the Dardinis. The note was secured by a mortgage on the Gaukler Property in favor of Mortgage 1, Incorporated, which William Dardini also signed contemporaneous with the execution of the warranty deed. Gloria Dardini did not sign either of those documents.

The mortgage was later assigned to JP Morgan Chase Bank, NA ("Chase"). After default, the Gaukler Property was foreclosed on by Chase and sold at Sheriff's auction to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). After the Dardinis' statutory right of redemption expired, Gloria Dardini filed this instant action requesting that the Court set aside the Sheriff's deed and brought various other federal and state law claims against Chase, Freddie Mac, and Trott & Trott, P.C. ("Trott & Trott"), a Michigan law firm.

William Dardini was thereafter brought into this action by Freddie Mac as a third party defendant. In response, he filed a Counterclaim against Freddie Mac and Cross-Claims against Chase and Trott & Trott, which states the same claims in Gloria Dardini's Complaint.

Before the Court are (1) Defendants JPMorgan Chase Bank, N.A. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment [Docket Entry No. 26]; (2) Defendants JPMorgan Chase Bank, N.A. and Federal Home Loan Mortgage Corporation's Motion for Judgment

2

on the Pleadings [Docket Entry No. 27]; (3) Defendants JPMorgan Chase Bank, N.A. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment [Docket Entry No. 37]; and (4) Defendants JPMorgan Chase Bank, N.A. and Federal Home Loan Mortgage Corporation's Motion to Dismiss [Docket Entry No. 38].

For the reasons that follow, the Court shall **GRANT** Chase and Freddie Mac's motions to dismiss and for summary judgment [Docket Entry Nos. 26, 27, 37 and 38].

## BACKGROUND

On or around September 22, 2000, William Dardini executed a promissory note in favor of Mortgage 1, Incorporated, in the amount of $114,000, and a mortgage to secure the note, which was recorded on October 5, 2000.[1]  (Docket Entry No. 1-2, at 4, ¶ 10; Docket Entry No. 26-4.)  William Dardini was the sole borrower and obligee on the note.  (Docket Entry No. 1-2, at 4.)  Likewise, William Dardini is the only obligee under the mortgage.  (*Id.* at 4, ¶¶ 10–11; Docket Entry No. 26-4, at 15–16.)

Contemporaneous with William Dardini's execution of the mortgage and note, the Dardinis purchased the Gaukler Property with the proceeds from the loan secured by the mortgage.[2]  (Docket Entry No. 1-2, at 4, ¶ 10; Docket Entry No. 26-2; Docket Entry No. 30, at 6, ¶ 10.) The Dardinis' paid $124,000 for the Gaukler Property.  (*Id.*)   The warranty deed specifically conveys the property to William Dardini and Gloria-Marie Dardini, husband and wife.  (*Id.* at 2.)

At the April 11, 2013, motion hearing, Ms. Lauren Phillips, counsel for Chase, stated on the

---

[1] At the April 11, 2013, motion hearing the parties agreed that the note was executed on September 22, 2000.

[2] At the April 11, 2013, Mr. A. Stephen Ramadan, the Dardinis' attorney, confirmed that all the proceeds from the loan were used to purchase the Gaukler Property.

record that the mortgage was assigned to Chase on May 13, 2009.  (*See also* Docket Entry No. 38-4.)

Following a default on the note, the Gaukler Property was foreclosed on by Chase.  (Docket Entry No. 1-2, at 4, ¶ 13.)  The Gaukler Property was sold at Sheriff's auction in Macomb County, Michigan, on September 17, 2010, to Freddie Mac.  (Docket Entry No. 26-6; Docket Entry No. 1-2, at 4, ¶ 13.)  The Sheriff's Deed provides that Freddie Mac obtained title subject to any redeeming party's statutory right of redemption, which would expire on March 17, 2011.  (Docket Entry No. 26-6, at 7.)  The Dardinis never exercised their statutory right of redemption.

Freddie Mac filed an eviction proceeding in the 40th Judicial District Court in St. Clair Shores, Michigan, naming William Dardini and "all other occupants as defendants."  (Docket Entry No. 1-2, at 4, at ¶ 14; Docket Entry No. 26-7.)  A Judgement (hereinafter referred to as "the Judgment of Possession"), by default as to William Dardini and by stipulation as to Gloria Dardini, was entered in favor of Freddie Mac on November 10, 2011.  (Docket Entry No. 26-7.)  The Judgment of Possession provides that "[a]n order evicting you will be issued on or after <u>1-3-12</u> unless you move."  (*Id.*)

On January 3, 2012, the date in which the Dardinis were required to move from the Gaukler Property pursuant to the Judgment of Possession, the Dardinis filed a Motion for Relief from Judgment in the 40th Judicial District Court, seeking relief from the Judgment of Possession, contending that the foreclosure sale violated M.C.L. § 600.3220 because Gloria Dardini's "interest in the property is not, and was not, subject to non-judicial foreclosure."  (Docket Entry No. 26-8, at 3, ¶ 10.)

On or around April 10, 2012, Gloria Dardini filed this instant action in the Macomb County Circuit Court, which was assigned Case No. 12-1764-NO.  (Docket Entry No. 1, at 2; Docket Entry

No. 1-2.) In her Complaint, Gloria Dardini names Chase, Freddie Mac and Trott & Trott as defendants and makes the following claims: (1) Equitable and Injunctive Relief-Set Aside Sheriff's Deed; (2) Fraud and Misrepresentation; (3) Conversion; (4) Trespass; (5) Violation of Michigan Consumer Protection Act; (6) Violation of the Fair Debt Collections Practices Act; (7) Interference with Possessory Interest; (8) Unjust Enrichment; and (9) Civil Conspiracy. (*Id.* at 5–9.)

On June 12, 2012, this action was removed to this Court by Chase and Freddie Mac on the basis of federal question jurisdiction. (Docket Entry No. 1.)

On July 10, 2012, Freddie Mac filed a Counterclaim against Gloria Dardini and a Third-Party Complaint against William Dardini. (Docket Entry No. 14, at 14–22.) In the Counterclaim and Third-Party Complaint, Freddie Mac, with regard to the mortgage, makes equitable claims of (1) Reformation; (2) Purchase Money Mortgage Doctrine; and (3) Ratification.

On November 20, 2012, William Dardini filed a Counterclaim against Freddie Mac and Cross-Claims against Chase and Trott & Trott. (Docket Entry No. 30, at 7–13.) In his Counterclaim and Cross-Claims, William Dardini makes the same claims in Gloria Dardini Complaint. (*Id.*)

At this time, the Dardinis are still living on the Gaukler Property. (Docket Entry No.1-2, at 4, ¶ 16; Docket Entry No. 30, at 7, ¶ 16.)

## STANDARD OF REVIEW

**A.    Motion for Summary Judgement under Rule 56(a).**

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Court views the record in the light most favorable to the nonmoving party and all reasonable inferences will be drawn in favor of that party. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "When

5

the non-moving party fails to make a sufficient showing of an essential element of his [or her] case on which he [or she] bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2458, 91 L.Ed. 2d 265 (1986)).  "The judge does not 'weigh the evidence and determine the truth of the matter . . . but determine[s] whether there is a genuine issue for trial.'" *Blackmore*, 390 F.3d at 895 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–52, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## B.    Motion to Dismiss under Rule 12(b)(6).

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) seek dismissal of a Complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P 12(b)(6). "[A] complaint survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949.

The Court "accept[s] all well-pleaded factual allegations of the complaint as true and construe[s] the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Although a complaint need not contain 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Reilly*, 680 F.3d at 622 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

6

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## C.     Motion for Judgment on the Pleadings under Rule 12(c).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal quotation marks omitted). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

In considering a Rule 12(c) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir.2007).  Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n. 3 (6th Cir.1997).

## ANALYSIS

In their motions to dismiss under Rule 12(b)(6) and Rule 12(c), Chase and Freddie Mac argue that count 1 in Gloria Dardini's Complaint and count 1 in William Dardini's Counterclaim/Cross-Claims should be dismissed under Federal Rule 12(c) and Federal Rule 12(b)(6), respectively, because (1) the Dardinis lack standing to challenge the Sheriff's deed; (2) the Dardinis' claims are

barred by the doctrine of laches; (3) the Dardinis' claims are barred by res judicata; and (4) the Gloria Dardini's Complaint should be dismissed for failure to join a necessary party, William Dardini.  (Docket Entry No. 27; Docket Entry No. 38.)

Chase and Freddie Mac have also filed motions for summary judgment, contending that the purchase money mortgage doctrine applies to the mortgage with regard to count 1 in the complaints. (Docket Entry No. 26; Docket Entry No. 37.)

Finally, Sections B through I are analyzed pursuant to Federal Rule 12(b)(6) and 12(c) with regard to the remaining counts in the Dardinis' complaints.  Accordingly, the Court relies on the factual assertions in the pleadings with regard to those claims.

**A.      The Dardinis' Request to Set Aside the Sheriff's Deed.**

**1.      The Dardinis Lack Statutory Standing to Challenge the Sheriff's Deed.**

The Dardinis never exercised their right of statutory redemption during the six month redemption period, after the date in which the Dardini's allege that the Sheriff's deed was recorded on September 28, 2010. (Docket Entry No. 1-2, at 4, ¶ 13; Docket Entry No. 30, at 7, ¶ 13.)  Instead Gloria Dardini waited until around April 10, 2012, to file her Complaint and William Dardini waited until November 20, 2012, to file his Counterclaim/Cross-Claims.  (Docket Entry No. 1, at 2; Docket Entry No. 1-2; Docket Entry No. 30, at 6–13.)

In the context of a foreclosure proceeding in Michigan, there are two forms of standing that must be addressed: (1) Article III standing, and (2) statutory standing.

Here, Chase and Freddie Mac do not challenge Article III standing.  However, the Court is satisfied that the Dardinis have Article III standing in this case. *See El–Seblani v. IndyMac Mortg. Servs.*, No. 12–1046, 2013 WL 69226, at *2 (6th Cir. Jan. 7, 2013) (finding Article III standing in

8

a Michigan wrongful-foreclosure case "when there is a concrete, particularized, and actual injury that is fairly traceable to the challenged action of the defendants and capable of being redressed by a favorable decision").

However, with regard to statutory standing, this "is not standing in the Article III sense, but rather a Michigan state-law requirement that is functionally similar to a statute of limitations." *Smith v. Litton Loan Servicing, LP*, No. 12-1684, 2013 WL 888452, at *2 (6th Cir. 2013). Following foreclosure, the rights and obligations of the parties are governed by statute. *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50–53, 503 N.W.2d 639 (1993). Upon expiration of the statutory redemption period, the purchaser of a sheriff's deed is vested with "all the right, title, and interest" in the property. *See* M.C.L. § 600.3236.

Because the Dardinis are outside of the redemption period, they can undo the divestment of their "property right only if there was fraud, accident, or mistake." *See Houston v. U.S. Bank Home Mortg. Wis. Servicing*, No. 11-2444, 2012 WL 5869918, at * 4–5 (6th Cir. 2012); *see also Mourad v. Homeward Residential, Inc.*, No. 12-1880, 2013 WL 870205, at *6 (6th Cir. 2013) (citing *Houston*, 2012 WL 5869918, at * 4.) "In particular, there must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant. *Houston*, 2012 WL 5869918, at *5 (6th Cir. 2012).

The Michigan Supreme Court clarified that a defect in a statutory foreclosure proceeding renders the foreclosure sale voidable, not void ab initio. *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329 (2012) ("Therefore, we hold that defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*."). A foreclosure that fails to comport with Michigan statutory foreclosure laws will be voidable only if plaintiffs

9

demonstrate that "they were prejudiced by defendant's failure to comply with MCL 600.3204. To demonstrate such prejudice, they must show they would have been in a better position to preserve their interests in the property absent defendant's noncompliance with the statute." *Id.* at 116, 825 N.W.2d 329.

Here, the Dardinis make no argument under *Kim*, even though the parties had the opportunity to request supplemental briefs and to address this issue at the April 11, 2013, motion hearing. Likewise, the Dardinis' complaints contain no indication that they "would have been in a better position to preserve their interests in the property absent defendant's noncompliance with the statute." *Id.* Instead, at the April 16, 2013, the Dardinis still contended that the mortgage is void because Gloria Dardini never signed that document. Likewise, the Dardinis do not offer any convincing argument challenging the foreclosure proceeding under M.C.L. § 600.3204. For these reasons and the reasons that follow in this section, the Court holds that the Dardinis have failed to establish fraud, accident, mistake, or other irregularity with regard to the foreclosure proceedings.

**2.      The Dardinis' Request to Set Aside the Sheriff's Deed is Barred by the Doctrine of Laches.**

Laches is the "negligent and unintentional failure to protect one's rights." *Nartron Corp. v. STMicroelectrics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). "Laches operates to bar equitable relief relating to the validity of recording instruments where the plaintiff had notice, lacked diligence, and prejudiced the defendant." *See Monette-Carter v. Green Tree Servicing, LLC*, No. 12-cv-15252, 2013 WL 1289343, at *4 (E.D. Mich. March 28, 2013) (citing *Staebler v. Buchanan*, 45 Mich. App. 55, 60–61, 205 N.W.2d 843 (1973)); *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) ("A party asserting laches must show: (1) lack of diligence by the party

against whom the defense is asserted, and (2) prejudice to the party asserting it."); *Wallace v. GMAC Mortg., LLC*, No. 12-cv-13032, 2013 WL 1090614, at *4 (E.D. Mich. Feb. 22, 2013) ("This Court and the Michigan Court of Appeals have found that the doctrine applies in the context of foreclosure proceedings, including situations where the plaintiff filed a complaint near the end of the redemption period."); *Chalmers v. JP Morgan Chase Bank, NA*, No. 12–10903, 2012 WL 4839861, *4 (E.D.Mich. Oct. 11, 2012); *Edmonds v. Wells Fargo Del. Trust Co.*, No. 12-cv-14264, 2013 WL 393239, at *3 (E.D. Mich. Jan. 31, 2013) ("Wells Fargo asserts that Edmonds claim is barred by the doctrine of laches. The equitable doctrine of laches bars an action when the party commencing a cause of action has delayed bringing suit when practicable without excuse or explanation and the delay would result in prejudice the opposing party due to a change in a material circumstance. Edmonds does not address Wells Fargo's argument in his Response. The sheriff's sale occurred on March 27, 2012. Edmonds did not file the present action until August 2012, nearly six months after the property was sold. He does not offer any reason for the delay.  The doctrine of laches also bars the Complaint.") (internal citations and quotations omitted).

As mentioned earlier, the Dardinis did not exercise their right of statutory redemption during the six month redemption period, after the date in which the Dardini's allege that the Sheriff's deed was recorded, September 28, 2010. (Docket Entry No. 1-2, at 4, ¶  13; Docket Entry No. 30, at 7, ¶ 13.)  Instead Gloria Dardini waited until around April 10, 2012, to file her Complaint and William Dardini waited until November 20, 2012, to file his Counterclaim/Cross-Claims to challenge the foreclosure proceedings.  (Docket Entry No. 1, at 2; Docket Entry No. 1-2; Docket Entry No. 30, at 6–13.)  The Dardinis lack of diligence prejudiced Chase and Freddie Mac because the Dardinis waited until after: "(1) the property securing the loan had been foreclosed and sold, (2) the

11

redemption period had expired, and (3) the property had been deeded to a third party, to bring their claim[s]."   *See Monette-Carter v. Green Tree Servicing, LLC*, 2013 WL 1289343, (E.D. Mich. March 28, 2013).  The Court holds that the Dardinis' request to set aside the Sheriff's deed is barred by the doctrine of laches.

### 3.       The Purchase Money Mortgage Doctrine Applies to the Mortgage.

In *Graves v. Am. Acceptance Mort. Corp.*, the Michigan Supreme Court recognized that a purchase money mortgage is as "a mortgage or security device taken back to secure the performance of an obligation incurred in the purchase of the property." 469 Mich. 608, 613, 677 N.W.2d 829 (2004) (internal quotation omitted).   The Michigan Supreme Court further recognized that "determining whether a mortgage is a purchase money mortgage requires considering whether the obligations incurred under the mortgage arose as part of the same transaction in which the mortgagor purchased the property securing the mortgage. The mortgage must have been given at the time of purchase of the security so as to constitute one transaction, and the proceeds must have been used by the mortgagor to purchase the security, in whole or in part." *Id.* at 614; *Bednowski & Michaels Dev., LLC v. Wallace*, 293 F. Supp.2d 728, 733 (E.D. Mich. 2003) ("In such a scenario, the purchase of the land and the mortgage are seen as simultaneous events, so that the mortgagor obtains the land already encumbered by the mortgage").

Here, the closing of the warranty deed and the mortgage occurred on the same day.  (Docket Entry No. 37-2; Docket Entry No. 37-4.)  At the April 11, 2013, motion hearing, the Dardinis stated that they used all of the proceeds from the loan to purchase the Gaukler Property.  Thus, the obligations incurred under the mortgage arose as part of the same transaction in which the mortgagor purchased the property securing the mortgage. The mortgage was given at the time of purchase of

the Gaukler Property so as to constitute one transaction, and the proceeds were used by the to purchase the Gaukler Property. According, the Court holds that the mortgage is a purchase money mortgage.

### 4.    The Court Will Not Address Chase and Freddie Mac's Res Judicata or Failure to Join a Necessary Party Arguments.

Because (1) the Dardinis' lack statutory standing, (2) the Dardinis are barred from challenging the Sheriff's deed based on the doctrine of laches and (3) the equitable mortgage doctrine applies, the Court will not address Chase and Freddie Mac's res judicata and failure to join a necessary party arguments in their motions to dismiss.

### B.    Fraud and Misrepresentation.

Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). To plead a fraud claim, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp*., 547 F.3d 564, 569–70 (6th Cir. 2008) (internal citations omitted). Furthermore, Rule 9(b) requires "a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotations omitted).

The Dardinis merely recite the elements of fraud in relation to all the Defendants, and do not differentiate or explain who made the fraudulent statements, when the fraud occurred, and whether they  relied on the fraud, contrary to Rule 9(b).  The Dardinis are essentially suing Chase because

it allegedly "had no rights to a foreclosure" and Freddie Mac because it purchased the Gaukler Property at the Sheriff's auction. The Dardinis do not offer any argument how those actions constitute fraud in Michigan. Accordingly, the Dardinis' fraud/misrepresentation claims are dismissed.

## C.    Conversion.

The Dardinis conversion claims assert that Chase and Freddie Mac "engaged in a continual course of conduct, pursuant to which they wrongfully dispossessed and/or disposed of the real property of the Plaintiff. Defendant converted these properties into cash which they received through the sale of the subject real properties or by their acquiring title thereto. As a direct and proximate result of the conversions by Defendant, Plaintiff has suffered substantial losses, and has been damaged." (Docket No. 1-2, at 6, ¶¶ 36–38; Docket Entry No. 30, at 9, ¶¶ 35–37.) (numbers omitted).

Under Michigan law, a claim for conversion only applies to personal property, not real property. *See, e.g. Wiener v. Bankers Trust Co.*, No. 11-cv-10770, 2012 WL 4088944 (E.D. Mich. Sept. 17, 2012); *Hurley v. Deutsche Bank Co. Americas*, No. 07–11924, 2008 WL 373426 (E.D. Mich. Feb. 12, 2008), citing Head v. Phillips Camper Sales & Rental, Inc., 234 Mich. App. 94, 111 (1999). *Embrey v. Weissman*, 74 Mich. App. 138, 143, 253 N.W.2d 687 (1977) (noting that property that is part of real property "cannot be the subject of conversion"); *see also Eadus v. Hunter*, 268 Mich. 233, 237, 256 N.W. 323 (1934) ("Trover lies only for the conversion of personal property and not for property while it is a part of the realty."). The Dardinis' conversion claims fail as a matter of law because this action does not involve a claim for conversion of personal, moveable property, rather than real property.

14

D.      **Trespass.**

The Dardinis contend that the "Defendants did trespass upon and unlawfully interfere with Plaintiffs rights and property." (Docket No. 1-2, at 7, ¶ 43; Docket Entry 30, at 9, ¶ 42.)

"A trespass is an unauthorized invasion upon the private property of another." *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc*., 239 Mich. App. 695, 705, 609 N.W.2d 607 (2000) (emphasis added). It is "an invasion of the plaintiff's interest in the exclusive possession of his or her land." *Terlecki v. Stewart*, 278 Mich. App 644, 653–654, 754 N.W.2d 899 (2008).

Here, the Dardinis assert that Defendants "have been made aware of the defects in the foreclosure process but are still attempting to convert the property to their own and evict the [the Dardinis] . . . from [their] . . . own property." (Docket Entry No. 1-2, at 4, ¶ 16; Docket Entry No. 30, at 7, ¶ 16.) Neither Freddie Mac nor Chase interfered with the Dardini's possessory interest because the Dardinis are still living on the Gaukler Property and maintain possession of that property. The Dardinis' complaints do not allege that Freddie Mac and Chase physically entered or invaded the Dardinis' exclusive possession of the Gaukler Property, instead they contend there was a trespass merely because Chase foreclosed on the Gaukler Property and Freddie Mac attempted to evict them after it lawfully purchased the Gaukler Property at the Sheriff's auction. In their responses and at the motion hearing, the Dardinis offer no convincing argument to support their claim. Therefore, this claim shall be dismissed.

E.      **The Michigan Consumer Protection Act.**

The Dardinis contend that, "[t]hrough their acts and omissions in the commission of their illegal foreclosures, Defendants did violate the Michigan Consumers Protection Act MCL 445.901 *et seq.* [("the MCPA")]." (Docket No. 1-2, at 7, ¶ 49; Docket Entry No. 30, at 10, ¶ 48.)

15

The MCPA does not apply to claims arising from residential mortgage transactions. *See, e.g.*, *Newton v. Bank West*, 262 Mich. App. 434, 686 N.W.2d 491 (Mich. App. 2004); *Salman v. U.S. Bank, NA, ND*, __F.Supp. 2d__, 2011 WL 4945845, at *6 ("Consequently, as the claims in this suit arise out of a residential mortgage loan transaction, the Salmans' claims under the MCPA cannot stand as U.S. Bank falls under the statutory exemption to the MCPA. There therefore cannot be any irregularity arising from U.S. Bank's alleged deceptive acts or unfair practices under the MCPA."); *see also O'Brien v. BAC Home Loan Servicing, LP*, No. 10–15136, 2011 WL 1193659, at *3 (E.D. Mich. Mar. 28, 2011) ("Courts have consistently applied the MCPA exemption to the mortgage business of regulated lending institutions."), *Chungag v. Wells Fargo Bank, N.A.*, No. 10–14648, 2011 WL 672229, at *4 (E.D. Mich. Feb. 17, 2011) ("Both Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage loan transactions.").

With regard to Freddie Mac, the Dardinis offer no argument how they are liable under the MCPA. Neither party disputes that Chase foreclosed on the Gaukler Property, not Freddie Mac. As such, the Dardinis' claims under the MCPA are dismissed.

## F.    The Fair Debt Collection Practices Act.

A claim under the FDCPA must be brought 'within one year from the date on which the violation occurs.'" *Chase Manhattan Mortg. Corp. v. Blakely–El*, No. 06–10343, 2007 WL 1041256, at * 2 (E.D. Mich. April 5, 2007) (quoting 15 U.S.C. § 1692k(d)). "The relevant consideration is the date of the alleged violation by the debt collector." *Purnell v. Arrow Fin. Services, LLC*, No. 05–73384, 2007 WL 421828 (E.D. Mich. Feb. 2, 2007).

Here, the Gaukler Property was sold at Sheriff's auction and the Sheriff's deed was recorded

16

on September 28, 2010. (Docket Entry No. 1-2, 4, ¶ 13; Docket Entry No. 30, at 7, ¶ 13.) On or around April 10, 2012, Gloria Dardini filed this instant action in the Macomb County Circuit Court, assigned Case No. 12-1764-NO. (Docket Entry No. 1-2.) The Dardinis do not provide any argument or authority to suggest that the statute of limitations was somehow tolled.

Furthermore, Freddie Mac is not "debt collector" for the purposes of the FDCPA. A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). Freddie Mac's only involvement in this action is that it was the successful bidder at the Sheriff's auction and subsequently filed an eviction proceeding against the Dardinis. Accordingly, the Dardinis' claims under the Fair Debt Collection Practices Act are dismissed.

### G. Interference with Possessory Interest.

In their complaints, the Dardinis state: "Plaintiffs had, among other rights and interests, a possessory interest in their affected real property. Defendants did illegally and without authorization, substantially interfere and negatively affect Plaintiffs rights and interest in the affected real property." (Docket No. 1-2, at 8, §§ 63–64; Docket Entry No. 30, at 11, ¶¶ 62–63.) (numbers omitted).

The Dardinis failed to cite to the statutory authority for their claims of Interference with Possessory Interest. Likewise, the Dardinis do not provide any explanation in their complaints how Chase and Freddie Mac interfered with their possessory rights. As mentioned before, the Dardinis are still in possession of the Gaukler Property. (Docket No. 1-2, at 4, ¶ 16; Docket Entry No. 30, at 7, ¶ 16.) Accordingly, these claims are dismissed.

17

H.      **Unjust Enrichment.**

The Dardinis contend that the Defendants have been unjustly enriched by the alleged wrongful foreclosure by Chase.  (Docket Entry No. 1-2, at 8, ¶ 66; Docket Entry No. 30, at 11, ¶ 65.)

The elements of unjust enrichment are: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App 463, 478, 666 N.W.2d 271 (2003); *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich.Ct.App.2006); *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652 (1991). When the elements of unjust enrichment are established, "the law operates to imply a contract in order to prevent unjust enrichment." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993); *Spartan Distribs. v. Golf Coast, Int'l, LLC*, No. 295408, 2011 WL 1879722, at * 5–6 (Mich.App.Ct. 2011) (holding that because a claim for unjust enrichment sounds in equity, relief for unjust enrichment is appropriate in a statutory foreclosure action only if a plaintiff can show fraud or some other irregularity).

As previously stated in Section 1, the Dardinis have failed to establish fraud or other irregularity and the mortgage is a purchase money mortgage.  Regardless,  the Dardinis have not shown any inequity. They received a $114,000 loan and then failed to make the promised payments under the note. "There is nothing inequitable about a bank's decision to exercise a standard, statutory foreclosure remedy when a borrower stops making payments on a loan secured by a mortgage." *Smith v. Litton Loan Servicing, LLP*, No. 12-1684, 2013 WL 888452, at * 3 (6th Cir. 2013). Likewise, Freddie Mac received no benefit from the Dardinis by lawfully purchasing the Gaukler Property at the Sheriff's auction.  Accordingly, the Dardinis' unjust enrichment claims are dismissed.

18

I.      **Civil Conspiracy.**

The Dardinis contend that "Defendants CHASE, FREDDIE MAC and TROTT & TROTT, PC, illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of defrauding Plaintiff of her property." (Docket Entry No. 1-2, at 9, ¶ 69; Docket Entry No. 30, at 11, ¶ 68.)

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351 (1992). "However, 'a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort.'" *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569 (2003) (quoting *Early Detection Ctr., PC v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830 (1986)).

Here, the Dardinis failed to allege a separate, actionable tort upon which the conspiracy claim is based because the Court holds that all of the Dardinis' claims are dismissed. Likewise, the Dardinis have not offered any argument how the Defendants engaged in a conspiracy to defraud them of their interests in the Gaukler Property. As mentioned before, Chase foreclosed on the Gaukler Property and Freddie Mac purchased the Gaukler Property at the Sheriff's auction. These claims fail as a matter of law.

**CONCLUSION AND ORDER**

**IT IS ORDERED** that the Court **GRANTS** Chase and Federal Home Loan Mortgage Corporation's Motions for Summary Judgment [Docket Entry Nos. 26 and 37], Motion for Judgment

on the Pleading [Docket Entry No. 27], and Motion to Dismiss [Docket Entry No. 38].


**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 23, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

20